NOTICE
Decision filed 12/16/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 220490-U

NO. 5-22-0490

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* T.T. and R.T., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Randolph County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-JA-1 |
| | ) | |
| Savannah M., | ) | Honorable |
| | ) | Richard A. Brown, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's judgment terminating the respondent's parental rights where the respondent does not dispute two of the circuit court's unfitness findings, and the circuit court's finding that termination of the respondent's parental rights was in the minor children's best interest was not contrary to the manifest weight of the evidence.

¶ 2    The respondent, Savannah M., is the mother of the T.T., born on March 14, 2012, and R.T., born on March 21, 2017 (minor children). On August 3, 2022, the circuit court entered a judgment terminating the respondent's parental rights based on its findings that the respondent was an unfit person, and that termination of the respondent's parental rights was in the best interest of the minor children. For the reasons that follow, we affirm the judgment of the circuit court.

1

¶ 3                                    I. BACKGROUND

¶ 4      On April 24, 2018, the Illinois Department of Children and Family Services (DCFS) received a hotline report stating that the minor children's father[1] was at a bus stop with T.T. and appeared to be "twitching and pacing an unusual amount." The hotline report further stated that T.T. had been going to neighbors' homes asking for food for herself and R.T., and that T.T. had been locked out of the home on several occasions. As such, DCFS became involved with the family and, on April 28, 2018, both parents tested positive for methamphetamine.

¶ 5      On May 10, 2018, a safety plan was enacted which placed the minor children in the home of a family friend. The safety plan was discontinued after the respondent had several negative drug screenings and the minor children were returned to the home on May 31, 2018. On November 14, 2018, however, the respondent reported for a drug screening and was observed with a bottle of urine "inside of herself" that fell out during testing. The respondent's drug screening on that date was positive for methamphetamine and the safety plan was reenacted. The respondent then refused drug screenings on November 28 and 29, 2018, and it was noted that the respondent had also missed two of her counseling sessions.

¶ 6      As such, on January 22, 2019, the State filed a petition for adjudication of wardship (petition for adjudication) regarding the minor children pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq*. (West 2018)). The State's petition for adjudication alleged that the minor children were neglected as defined in section 2-3(1)(b) of the Act (*id*. § 2-3(1)(b)), because the minor children were in an environment that was injurious to their welfare. The petition

_____

[1]Steven T. is the natural father of T.T. and R.T. Steven T.'s parental rights were also at issue in the circuit court's proceedings; however, they are not at issue in this appeal. As such, this court will limit the summarization of any background information pertaining to Steven T. to that information necessary to the issues raised in this appeal.

for adjudication stated that the respondent had initially engaged in services, and had a series of negative drug screenings, but on November 14, 2018, the respondent had tested positive for methamphetamine. The petition for adjudication further stated that the respondent refused drug screenings on September 14, November 28, and November 29, 2018.

¶ 7 The petition for adjudication went on to state that the respondent reengaged in services and had negative drug screenings in December 2018, but that she had appeared at a drug counseling session with "packaged urine" during the first week of January 2019. Finally, the petition for adjudication stated that, on January 17, 2019, a DCFS investigator had located the respondent at her residence and that the respondent was sleeping, difficult to awake, confused, irritable, and could not sit still to answer the investigator's questions. As such, the State's petition for adjudication stated that it was in the best interest of the minor children, and the public, that the minor children be adjudicated wards of the court.

¶ 8 The circuit court conducted a shelter care hearing and entered a written temporary custody order on January 22, 2019. The circuit court found probable cause that the minor children were neglected, and also found that there was an immediate and urgent necessity to remove the minor children from the home for the minor children's welfare, safety, and best interest. The circuit court further found that DCFS had made reasonable efforts, but that such efforts had not eliminated the necessity to remove the minor children from the home. As such, the circuit court ordered the minor children into the temporary custody of the guardianship administrator of DCFS and set the matter for an adjudicatory hearing.

¶ 9 On January 23, 2019, the State filed an amended petition for adjudication (amended petition). The amended petition mirrored the State's initial petition for adjudication, but corrected R.T.'s date of birth from March 1, 2017, to March 21, 2017.

3

¶ 10    On April 18, 2019, the circuit court conducted an adjudicatory hearing on the State's amended petition. The respondent was present at the hearing, represented by counsel, and admitted to the allegations contained in the amended petition. Based on the respondent's admissions, the circuit court held that the minor children were neglected as defined in section 2-3(1)(b) of the Act (*id.*), because the minor children were in an environment that was injurious to their welfare based on the respondent having tested positive for methamphetamine. The circuit court set the matter for a dispositional hearing and admonished the respondent to cooperate with DCFS and to comply with the terms of her service plan or risk the termination of her parental rights regarding the minor children.

¶ 11    On April 22, 2019, Hoyleton Youth & Family Services (HYFS), acting on behalf of DCFS, filed a report with the circuit court. Attached to the HYSF report was the respondent's service plan dated February 17, 2019. The HYFS report stated that the respondent's required services were to participate in parenting classes; complete a mental health assessment and comply with any recommended treatment; complete a substance abuse assessment and comply with any recommended treatment; participate in random drug screenings; maintain a legal means of income; maintain suitable housing; and refrain from any criminal/illegal activities. According to the HYFS report, the respondent was rated satisfactory in housing, but was rated unsatisfactory on all other services. The respondent's service plan mirrored the required services set out in the HYFS report and, in addition, stated that the respondent had completed her substance abuse assessment but had not been consistent with the assessment's recommendation that she attend weekly counseling sessions.

¶ 12    On June 6, 2019, the circuit court conducted a dispositional hearing and entered a written dispositional order the same day. The circuit court found that the respondent was unfit, for reasons

other than financial circumstances alone, to care for, protect, train, or discipline the minor children and that the health, safety, and best interest of the minor children would be jeopardized if the minor children remained in the respondent's custody. The circuit court further found that DCFS had made reasonable, but unsuccessful, efforts to prevent the need for the removal of the minor children from the home. Based on these findings, the circuit court held that the minor children's home was unsafe, directed that the minor children be made wards of the court, and placed the custody and guardianship of the minor children with the guardianship administrator of DCFS.

¶ 13 The circuit court further ordered the respondent to obtain a psychological evaluation and to cooperate with any treatment recommendations; obtain a drug/alcohol assessment and cooperate with any treatment recommendations; submit to random drug screenings; refrain from the use of all mood or mind-altering substances, unless prescribed by a licensed physician; establish and maintain an appropriate, clean, healthy, and stable residence; and immediately inform her caseworker of any change in her place of residence. The circuit court set a permanency goal of return home within 12 months.

¶ 14 On December 5, 2019, the circuit court conducted a permanency hearing and entered a permanency order pursuant to section 2-28 of the Act (*id.* § 2-28). The circuit court found that the respondent had not made substantial progress towards the return of the minor children to the home based on the respondent's unsatisfactory progress in completing her required services. The circuit court further found that DCFS had made reasonable efforts in providing those services. As such, the circuit court directed that the guardianship and custody of the minor children remain with DCFS and continued the permanency goal of return home within 12 months.

¶ 15 On May 21, 2020, HYFS filed a report with the circuit court. The HYFS report stated, *inter alia*, that the respondent was "now in prison at Decatur Correctional Center for possession

5

of controlled substances serving a 3 year sentence." The HYFS report did not contain any additional information regarding the respondent's incarceration. The HYFS report went on to state that the respondent was rated unsatisfactory in all of her services and made a recommendation to the circuit court that the permanency goal be changed from return home within 12 months to substitute care pending court determination on termination of parental rights. The HYFS report stated that the change in the recommended permanency goal was based upon the respondent having adequate time to address and correct the conditions which brought the minor children into care, but that the respondent remained unsatisfactory in her ability to correct those conditions.

¶ 16    The circuit court also conducted permanency reviews of this matter on June 4, 2020, December 3, 2020, and June 17, 2021. After each review, the circuit court entered permanency orders pursuant to section 2-28 of the Act (*id.*). Each of the circuit court's permanency orders stated that the respondent had not made substantial progress towards the return of the minor children to the home based on the respondent's unsatisfactory progress toward completing her services. The circuit court's permanency orders further stated that DCFS had made reasonable efforts in providing those services. As such, at each of these reviews, the circuit court directed the guardianship and custody of the minor children to remain with DCFS and continued the permanency goal of return home within 12 months, despite the recommendation of HYFS that the circuit court change the permanency goal to substitute care pending court determination on termination of parental rights.

¶ 17    On February 7, 2022, HYFS filed another report with the circuit court. The HYFS report stated that the respondent remained unsatisfactory in the completion of her substance abuse services and parenting classes. The HYFS also stated, in regard to the respondent's mental health services, that the respondent had seen a counselor in prison and had been working on her mental

6

health issues while incarcerated. The HYFS report went on to state, however, that the respondent was rated unsatisfactory in her mental health services because the respondent was required to continue those services as part of her parole requirements, and she had not reengaged in those services. The HYFS report further stated that the respondent was rated satisfactory for employment since the respondent had submitted pay stubs as proof of employment, and rated satisfactory regarding criminal/illegal activity since the respondent had not engaged in any further criminal/illegal activity since her release from prison. The HYFS report again recommended a permanency goal of substitute care pending court determination on termination of parental rights.

¶ 18 On February 28, 2022, the respondent executed a waiver of permanency review hearing and admitted to the contents of the HYFS report of February 7, 2022. The same day, the circuit court entered a written permanency order pursuant to section 2-28 of the Act (*id.*) and entered a permanency goal of substitute care pending court determination on termination of parental rights.

¶ 19 On March 9, 2022, the State filed a petition to terminate parental rights and motion for appointment of guardian with power to consent to adoption (petition to terminate), pursuant to section 2-13(4) of the Act (*id.* § 2-13(4)). The State's petition to terminate alleged that the respondent's whereabouts were unknown, and that the respondent was an unfit person as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)), as follows:

(1) that the respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor child as defined in section 1(D)(b) of the Adoption Act (*id.* § 1(D)(b));

(2) that the respondent failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minor children as defined in section 1(D)(m)(i) of the Adoption Act (*id.* § 1(D)(m)(i));

7

(3) that the respondent failed to make reasonable progress towards the return of the minor children to the home during any nine-month period, including December 5, 2019, to June 4, 2020; June 5, 2020, to December 3, 2020; December 4, 2020, to June 17, 2021; and June 18, 2021, to February 28, 2022, following the adjudication of neglect, as defined in section 1(D)(m)(ii) of the Adoption Act (*id.* § 1(D)(m)(ii)); and

(4) that the respondent had deserted the minor children for more than three months next preceding the commencement of the adoption proceedings as defined in section 1(D)(c) of the Adoption Act (*id.* § 1(D)(c)).

The State's petition for termination also alleged that it would be in the best interest of the minor children that the respondent's parental rights be terminated, and that guardianship of the minor children be permanently awarded to DCFS, with the authority to consent to the adoption of the minor children.

¶ 20    On April 5, 2022,[2] HYFS filed a fitness report with the circuit court. The fitness report stated that the respondent had remained in contact with her caseworker and had been compliant in visitation. The fitness report, however, also stated that the respondent had been offered services multiple times and had not engaged in any services. Specifically, the respondent had been referred for services on February 7, 2019, October 16, 2020, and July 15, 2021. As such, the fitness report indicated that the respondent was rated unsatisfactory in the completion of her substance abuse services, parenting classes, mental health services, housing, and employment. The only service that the respondent was rated as satisfactory was not engaging in criminal/illegal activity.

---

[2]The HYFS fitness report was again filed on May 12, 2022, and the only noted change to the report was the date of the circuit court's hearing.

¶ 21　The fitness report went on to state that the minor children were thriving and nurtured in their foster home and that their needs were being met. The fitness report stated that T.T. was bonded with the respondent, but that R.T. struggled to bond with the respondent. The fitness report also indicated that T.T. had reported that she wanted the respondent in her life, but that she did not want to reside with the respondent again and wanted to be adopted by her foster parent. The fitness report further stated that the minor children considered their foster home as their home and that the minor children were stable and safe in the foster home with all their needs being met. Finally, the fitness report stated that the minor children had been in the foster home since January 2019; that the minor children were thriving in their placement; that all of the minor children's wants and needs were being met; and that it would be in the minor children's best interest that the respondent's parental rights be terminated.

¶ 22　The circuit court conducted a hearing on the fitness portion of the State's petition for termination on May 26, 2022. After final arguments, the circuit court orally presented its findings in open court as follows:

> "Well, based on the testimony that's been presented at this hearing, the Court—and based on the statute, the juvenile code that the Court is to follow in deciding whether a motion to find that the parents are unfit, the Court would find that the [respondent] and father have failed to maintain a reasonable degree of interest, concern or responsibility for the welfare of the minor children. Further, the Court finds that based on the testimony presented at this hearing that both the [respondent] and the father have failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minor children from their home.

> \* \* \*

9

Next, I believe that the [respondent] and father have failed to make reasonable progress towards the return of the minors within nine months after the adjudication of the abuse as well as any nine-month period during this time that the children have been in care."

On June 3, 2022, the circuit court entered a written order reflecting its oral findings above, and further stated that it had found the respondent to be an unfit person as defined by statute. The circuit court then set the matter for a hearing on the best interest portion of the State's petition to terminate.

¶ 23 The circuit court's hearing on the best interest portion of the State's petition to terminate was conducted on July 21, 2022. The State called Corinne Fish as its only witness. Fish testified that she was a foster care case manager with HYFS and had been the caseworker in this matter from February 2019 to June 2022. According to Fish's testimony, the respondent remained unsatisfactory in all of her required services except employment and refraining from criminal/illegal activity. Fish stated that the respondent had been employed, but noted that her employment had been inconsistent. Fish further stated that the respondent had been residing between her mother's residence and the residence of a friend, and that neither of these residences would be an appropriate arrangement for the minor children.

¶ 24 Fish stated that the respondent had refrained from criminal/illegal activity since her discharge from the Decatur Correctional Center for possession of a controlled substance; however, the respondent had reported occasional marijuana use. Fish acknowledged that the respondent's last drug screening had been negative for all substances and that the respondent had been enrolled in a substance abuse program, but Fish was not aware of the respondent's current status in the substance abuse program. Fish testified that, starting in May 2022, the respondent had been

attempting to meet her services, but that the respondent was not yet rated satisfactory in those services. Fish further testified that it was her opinion that it would be in the best interest of the minor children that the respondent's parental rights be terminated. Fish testified that this matter had been pending for 3½ years and that the respondent had not been able to correct the conditions that had brought the minor children into care.

¶ 25    Fish went on to testify that the minor children had been in the same foster placement since coming into care and that the foster home was a permanent option for the minor children. Fish stated that the foster parent was able to provide for all the medical and educational needs of the minor children. Fish also stated that, when R.T. was first placed in the foster home, he had difficulty communicating and that the foster parent had engaged R.T. in services that had improved his speech and social skills. Fish further testified that the foster parent had provided for the basic needs of the minor children, including clothing.

¶ 26    Fish stated that T.T. felt safe and had bonded with her foster parent as a parental figure. Fish stated that T.T. was 10 years old and wanted to be adopted by her foster parent, but had also expressed a desire to continue a relationship with the respondent. Fish stated that the foster parent was supportive of a continuing relationship between the minor children and the respondent. Fish testified that the respondent never had an unsupervised visit with the minor children in the 3½ years that this matter had been pending.

¶ 27    Fish stated that, based on her observations, the minor children and the foster parent had bonded as a family. Fish testified that the foster parent was willing to adopt the minor children and provide them permanency. Fish further testified that she had authored the HYFS fitness report, and the circuit court, without objection, admitted the fitness report into evidence.

11

¶ 28   Next, the respondent testified on her own behalf. The respondent testified that she was the mother of the minor children, that she was bonded with the minor children, and that she did not believe it was in the minor children's best interest for her parental rights to be terminated. The respondent stated that she had participated in all of her scheduled parenting time since leaving the Department of Corrections and that she had spoken with the minor children every Saturday while she had been incarcerated. The respondent stated that, since she had been out of prison, she had provided the minor children with food, Christmas presents, and birthday presents. The respondent further stated that she had family support to assist her if the minor children were returned to her care.

¶ 29   The respondent also testified that she was currently residing with her boyfriend and that he worked "off and on," but that the respondent did not know what he did for a living. The respondent further stated that she was staying with her mother "off and on." The respondent testified that she was employed cleaning house for cash, but that she does not work a 40-hour week anywhere. The respondent acknowledged that this matter had been pending since 2018, and that she had not done anything toward the completion of her services prior to going to prison in December 2019. The respondent stated, however, that since her release from prison in October 2020, she had been trying to complete every requirement in her service plan. The respondent acknowledged that she currently did not own a vehicle and that she was reliant on her mother and boyfriend for transportation. The respondent stated, however, that if the minor children were returned to her, she would have a car, a place of her own to live, and "definitely have a better job," but that she currently did not have any of those things.

¶ 30   After completion of the respondent's testimony, the circuit court found as follows:

"Well, based on the testimony and based on the exhibit that was entered, the Court has considered the nature and length of these children's relationship with their present caretaker. The Court's also considered the effect that a change in placement would have on their emotional and psychological well-being. The Court believes that it would be in the best interest of the children that the parental rights of [father] and [the respondent] be terminated. That will be the order of the Court."

¶ 31 On August 3, 2022, the circuit court entered a written order terminating the parental rights of the respondent with regard to the minor children based upon its June 6, 2019, finding that the respondent was an unfit person and its July 21, 2022, finding that it was in the best interest of the minor children that the respondent's parental rights be terminated. The respondent now appeals the judgment of the circuit court terminating her parental rights arguing that the circuit court's findings that she was an unfit person, and that termination of her parental rights was in the best interest of the minor children, were against the manifest weight of the evidence.

¶ 32                                    II. ANALYSIS

¶ 33 "A parent's right to raise his or her biological children is a fundamental liberty interest, and the involuntary termination of such right is a drastic measure." *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 28. The Act (705 ILCS 405/1-1 *et seq.* (West 2020)), along with the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2020)), governs the proceedings for the termination of parental rights. *In re D.F.*, 201 Ill. 2d 476, 494 (2002). The Act provides a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2020). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds of unfitness enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). 705 ILCS 405/2-29(2), (4) (West 2020); *In re D.T.*, 212 Ill. 2d 347, 352-53 (2004).

13

Even if the State alleges more than one count of unfitness, only one count needs to be proven to find a parent unfit. *In re J.A.*, 316 Ill. App. 3d 553, 564 (2000). If the court finds the parent unfit, the State must then show that termination of parental rights would serve the children's best interest. 705 ILCS 405/2-29(2) (West 2020); *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 28.

¶ 34    A determination of parental unfitness involves factual findings and credibility assessments that the circuit court is in the best position to make, and a finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re Tiffany M.*, 353 Ill. App. 3d 883, 889-90 (2004). "A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the determination is arbitrary, unreasonable, and not based on the evidence." *In re G.W.*, 357 Ill. App. 3d 1058, 1059 (2005). In this matter, the respondent argues that the circuit court's findings at both stages of the termination proceedings were against the manifest weight of the evidence. As such, we begin our analysis with the issue of whether the circuit court erred in its determinations that the respondent was an unfit person.

¶ 35                                  A. Unfitness Findings

¶ 36    The circuit court found the respondent to be an unfit person based on three grounds of unfitness. Specifically, the circuit court found as follows:

> (1) that the respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor child as defined in section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2020));
>
> (2) that the respondent failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minor children as defined in section 1(D)(m)(i) of the Adoption Act (*id.* § 1(D)(m)(i)); and

14

(3) that the respondent failed to make reasonable progress towards the return of the minor children to the home during any nine-month period, including December 5, 2019, to June 4, 2020; June 5, 2020, to December 3, 2020; December 4, 2020, to June 17, 2021; and June 18, 2021, to February 28, 2022, following the adjudication of neglect, as defined in section 1(D)(m)(ii) of the Adoption Act (*id.* § 1(D)(m)(ii)).

¶ 37    On appeal, however, the respondent only challenges the circuit court's finding that the respondent was an unfit person as defined by section 1(D)(m)(ii) of the Adoption Act (*id.* § 1(D)(m)(ii)). As such, the State argues that the respondent has forfeited any challenge to the circuit court's alternate findings of unfitness. We agree.

¶ 38    Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires that an appellant's brief "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Rule 341(h)(7) further provides that any points not argued in compliance with Rule 341(h)(7) are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). We further note that this court is not a repository into which an appellant may foist the burden of argument and research, nor is it the function or obligation of this court to act as an advocate or search the record for error. See *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010); *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). Although Rule 341 is occasionally relaxed when a party is *pro se*, there is no reason for relaxation in this mater since the respondent is represented by counsel. Therefore, pursuant to Rule 341(h)(7), we find that the respondent has forfeited any argument regarding the circuit court's findings that the respondent was an unfit person as defined in sections 1(D)(b) and 1(D)(m)(i) of the Adoption Act. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); 750 ILCS 50/1(D)(b), (D)(m)(i) (West 2020).

15

¶ 39    As stated above, only one ground of unfitness needs to be proven to find a parent unfit and, in this matter, two of the circuit court's unfitness findings are not disputed by the respondent. As such, even if this court were to find, as the respondent argues, that the circuit court's finding that the respondent was an unfit person as defined in section 1(D)(m)(ii) was against the manifest weight of the evidence, this court could not grant effective relief since there would remain two undisputed findings of unfitness supporting the circuit court's judgment terminating the respondent's parental rights. Therefore, we affirm that portion of the circuit court's judgment terminating the respondent's parental rights based on its undisputed findings that the respondent was an unfit person as defined in sections 1(D)(b) and 1(D)(m)(i) of the Adoption Act. 750 ILCS 50/1(D)(b), (D)(m)(i) (West 2020).

¶ 40                                    B. Best Interest

¶ 41    The respondent also argues that the circuit court's finding that it was in the minor children's best interest to terminate her parental rights was against the manifest weight of the evidence. The respondent states that the testimony and evidence presented at the best interest hearing demonstrated that the respondent was making progress towards completion of her service plan and that the respondent maintained a strong bond with the minor children.

¶ 42    The respondent further argues that the only evidence that supported the termination of the respondent's parental rights as being in the best interest of the minor children was the caseworker's testimony. The respondent argues that the caseworker contradicted her opinion that it would be in the minor children's best interest to terminate the respondent's parental rights by testifying that T.T. wanted to maintain a relationship with the respondent. As such, the respondent argues that there was not sufficient evidence presented at the hearing for the circuit court to determine that it was in the best interest of the minor children to terminate the respondent's parental rights.

16

¶ 43    In determining the best interest of the children, the circuit court must consider the following statutory factors in the context of the children's age and developmental needs: (1) the children's physical safety and welfare; (2) the development of the children's identity; (3) the children's background and ties; (4) the children's sense of attachments, including where the children feel love, attachment, and a sense of being valued, the children's sense of security, the children's sense of familiarity, the continuity of affection for the children, and the least disruptive placement alternative for the children; (5) the children's wishes and long-term goals; (6) the children's community ties; (7) the children's need for permanence, which includes a need for stability and continuity of relationships with parent figures, siblings, and other relatives; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the children. 705 ILCS 405/1-3(4.05) (West 2020). The court is not required to make specific findings of fact concerning the best interest factors as long as there is some indication in the record that it considered the enumerated factors when making the best interest determination. *In re Marriage of Stribling*, 219 Ill. App. 3d 105, 107 (1991).

¶ 44    The respondent does not allege that the circuit court failed to consider the enumerated factors when making its best interest determination. Instead, the respondent argues that the only evidence supporting the State's allegation that it would be in the best interest of the minor children to terminate the respondent's parental rights was the caseworker's testimony. Our review of the record, however, indicates that the circuit court's finding was also supported by the respondent's testimony. By her own admission, the respondent testified that she did not maintain a residence but resided "on and off" between her boyfriend's home and the home of her mother, that she did not have full-time employment, and that she did not have her own means of transportation. The

17

respondent further testified that she was in the process of completing her required services but had not yet completed those services although this matter had been pending since 2018.

¶ 45    Along with the respondent's testimony, the circuit court heard testimony from the caseworker, and considered her written report, that the foster parent had provided a stable, loving home for the minor children since the beginning of this matter and had provided for all of the needs of the minor children, including education, medical, and basic needs, such as clothing. Further, the circuit court heard evidence that the minor children had also bonded with the foster parent and that T.T. had stated a desire to be adopted by her foster parent. As such, the circuit court found that it was in the best interest of the minor children and the public that the respondent's parental rights and responsibilities be terminated.

¶ 46    After carefully reviewing the record and in light of the best interest factors that must be considered, we do not find that the opposite conclusion is clearly evident or that the circuit court's findings were arbitrary, unreasonable, and not based on the evidence. As such, we find that the circuit court's determination that it was in the best interest of the minor children to terminate the respondent's parental rights was not against the manifest weight of the evidence.

¶ 47    Therefore, we find that the circuit court's finding that the respondent was an unfit person as defined in sections 1(D)(b) and 1(D)(m)(i) of the Adoption Act (750 ILCS 50/1(D)(b), (D)(m)(i) (West 2020)) is undisputed, and the circuit court's finding that termination of the respondent's parental rights was in the minor children's best interest was not contrary to the manifest weight of the evidence.

¶ 48                                    III. CONCLUSION

¶ 49    Based on the foregoing, we affirm the judgment of the circuit court.

18

¶ 50    Affirmed.